Amanda R. Washton (SB# 227541)
*a.washton@conklelaw.com*
Chelsea A. Bernard (SB# 343509)
*c.bernard@conklelaw.com*
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100 • Fax: (310) 998-9109

Stephen H. Bean (admitted *Pro Hac Vice*)
*steve@legendslaw.com*
LEGENDS LAW GROUP, PLLC
330 N Main
Kaysville, Utah 84037
Phone (801) 337-4500

Attorneys for Plaintiff Eat Strong, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

Eat Strong, LLC., a Utah company,

Plaintiff,

v.

Palomino Trade, LLC, a California company,

Defendant.

Case No. 5:23-cv-02041 DDP (KKx)

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

[*Declaration of Amanda R. Washton and [Proposed] Judgment filed concurrently herewith]*

Hearing Date: March 4, 2024
Hearing Time: 9:00 A.M.
255 East Temple Street,
Los Angeles, CA 90012
Courtroom: 850

Hon. R. Gary Klausner,
Presiding Judge

Trial Date: None

**TO THE DEFAULTING PARTY:**

**PLEASE TAKE NOTICE** that on **March 4, 2024, at 9:00 A.M.**, or as soon thereafter as counsel may be heard in Courtroom 850 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, CA 90012, Plaintiff, Eat Strong, LLC, ("Plaintiff" or "Eat Strong") will move the Court for a Default Judgment.

Plaintiff's Motion is based on the Default of Defendant Palomino Trade, LLC entered herein on December 27, 2023, the Declaration of Amanda R. Washton filed concurrently herewith, and the Memorandum of Points and Authorities. Plaintiff concurrently submits the Declaration of Amanda R. Washton and a [Proposed] Final Judgment, including a permanent injunction and for an award of attorneys' fees in the amount of $16,499.

Dated: January 31, 2024

Amanda R. Washton
Chelsea A. Bernard, members of
CONKLE, KREMER & ENGEL
Professional Law Corporation

By: */s/ Amanda R. Washton*
Amanda R. Washton
Attorneys for Plaintiff Eat Strong, LLC

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 6

II. STATEMENT OF FACTS ..... 6

A. PLAINTIFF'S TRADEMARK RIGHTS ..... 6

B. DEFENDANT'S INFRINGING ACTIVITY AND FAILURE TO LITIGATE ..... 8

III. POINTS AND AUTHORITIES ..... 12

A. LEGAL STANDARD FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT ..... 12

1. Possibility of Prejudice to Plaintiff ..... 13

2. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint ..... 13

3. Sum of Money at Stake ..... 15

4. Possibility of Dispute Concerning Material Facts ..... 16

5. Whether Default was Due to Excusable Neglect ..... 16

6. Strong Policy Underlying the Federal Rules of Civil Procedure ..... 16

B. PLAINTIFF IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS ..... 16

C. PLAINTIFF'S ARE ENTITLED TO A PERMANENT INJUNCTION ..... 17

IV. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Blumenthal Distributing, Inc. v. Comoch Inc.*, 652 F.Supp.3d 1117 (C.D. Cal. 2023) ........ 12, 15, 17

*Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036 (9th Cir. 1999) ........ 13

*Carbon Chemistry Ltd. v. Banoun*, 2021 WL 4437508 (C.D. Cal. July 29, 2021) ........ 18

*Crocs, Inc. v. La Modish Boutique*, 2021 WL 8441527 (C.D. Cal. Dec. 9, 2021) ........ 14

*Davidoff & CIE v. PLD Inter. Corp.*, 263 F.3d 1297 (11th Cir. 2001) ........ 18

*Derek Andrew, Inc. v. Proof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008) ........ 17

*Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282 (C.D. Cal. 2001) ........ 17

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ........ 12, 13, 15, 16

*Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir. 1977) ........ 12

*GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ........ 14

*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606 (9th Cir. 2016) ........ 12

*Pepsico, Inc. v. Cal. Sec. Cans.*, 238 F.Supp.2d 1172 (C.D.Cal., 2002) ........ 16, 18

*Phillip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003) ........ 16, 18

*Sebastian Intern., Inc. v. Russolillo, et al.*, 151 F. Supp.2d 1215 (C.D. Cal. 2001) ........ 18

*Syntex Healthcare Products Co., Ltd. v. McCreless Enterprises, LLC*, 2023 WL 4503528 (C.D. Cal. June 2, 2023) ........ 17, 18

*Watec Co. v. Liu*, 403 F.3d 645 (9th Cir. 2005) ........ 17

**FEDERAL STATUTES**

15 U.S.C. § 1114 .......... 13
15 U.S.C. § 1114(a)(1) .......... 13, 17
15 U.S.C. § 1116(a) .......... 18
15 U.S.C. § 1117(a) .......... 16, 17
15 U.S.C. § 1125 .......... 17

**FEDERAL RULES**

Fed. R. Civ. P. 55(b) .......... 12
Fed R. Civ. P. 55(b)(2) .......... 12

**STATE STATUTES**

Cal. Bus. & Prof. § 17200 et seq. .......... 18

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On October 5, 2023, Plaintiff Eat Strong, LLC ("Plaintiff" or "Eat Strong") filed a Complaint in the above-entitled matter against Palomino Trade, LLC ("Defendant" or "Palomino") for trademark infringement and unfair competition regarding the sale of goods and serves bearing nearly identical reproductions of Eat Strong's trademark, "FUELED FRESH KITCHEN." (*See* Declaration of Amanda R. Washton ("ARW Decl.") at ¶ 5.) On December 27, 2023, the Clerk of this Court entered default against Defendant after Defendant failed to file a responsive pleading to the Complaint. (December 27, 2023 Default by Clerk (Docket 22); ARW Decl. at ¶ 12.) Plaintiff has satisfied the requirements of FRCP 55. (*Id.*) Consequently, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Default Judgment against Defendant. Included in its Motion, Plaintiff seeks an attorneys' fees award in the amount of $16,499. (ARW Decl. at ¶¶ 15-18; Exhibits I and J.)

## II. STATEMENT OF FACTS

Plaintiff Eat Strong owns and operates a restaurant called Fueled Fresh Kitchen, located at 12259 S 450 E, Suite B, Draper, Utah 84020 (hereinafter the "Fueled Restaurant"). (Complaint at ¶ 8.; ARW Decl. at ¶ 2) Although there is currently just one Fueled Restaurant, Plaintiff has plans to expand nationwide by selling franchises. (Complaint at ¶ 9; ARW Decl. at ¶ 2.) The Fueled Restaurant has a reputation for high quality restaurant services by offering excellent food, unsurpassed customer service, and affordable prices in a family-friendly environment. (Complaint at ¶ 10; ARW Decl. at ¶ 2.)

### A. PLAINTIFF'S TRADEMARK RIGHTS

To protect its brand, Eat Strong obtained U.S. Federal Trademark Registration No. 5789701, filed on August 28, 2018, for the mark FUELED FRESH KITCHEN in International Class 043 for restaurant services (the "Trademark"). (Complaint at ¶ 11.; ARW Decl. at ¶ 3; Exhibit ("Ex.") A.) Plaintiff advertises nationwide for its

Fueled Restaurant services using the Trademark. (Complaint at ¶ 12.) Examples of Plaintiff's use of the Trademark includes the following:







(Complaint at ¶ 12.)

Plaintiff also provides a meal preparation service for ready-made-meals using a meal prep order form bearing the FUELED FRESH KITCHEN logo. (ARW Decl. at ¶ 4; Ex. B.)

Plaintiff has been using the Trademark to provide restaurant services in the United States since at least as early as November 27, 2018. (Complaint at ¶ 14.) The Trademark mark serves as a source-identifier for genuine Fueled Restaurant services and is used in or on all restaurant services offered by Plaintiff in the United States. (Complaint at ¶ 15.)

Plaintiff Eat Strong LLC has invested significant time, energy, and money advertising, promoting, and selling restaurant services featuring the Trademark, as well as ensuring the high quality of the services it provides which bear the Trademark. (Complaint at ¶ 16.) These efforts have resulted in widespread and favorable public acceptance and recognition of the Trademark. (*Id.*)

### B. DEFENDANT'S INFRINGING ACTIVITY AND FAILURE TO LITIGATE

Defendant Palomino Trade, LLC has promoted, offered for sale, and/or sold restaurant services under the mark FUEL'D KITCHEN (the "Infringing Mark"). (Complaint at ¶ 17.) Plaintiff discovered that Defendant was marketing, offering for sale and selling restaurant services featuring the Infringing Mark as well as meal prep services (collectively, "the Infringing Services"). (*Id.*) The Infringing Services were not approved for sale by Plaintiff. (*Id.*) Defendant's FUEL'D KITCHEN mark is confusingly similar to Plaintiff's FUELED FRESH KITCHEN mark. (*Id.* at ¶ 19.)

Defendant is using the Infringing Mark without license, authority, or other permission from Eat Strong, LLC. (Complaint at ¶ 20.) The Infringing Services were promoted by Defendant and sold under the Infringing Mark. (*Id.* at ¶ 21.) Examples of the Infringing Services follow:


Menu
PROTEINS
4oz 6oz 8oz
Chicken $11.99 $12.99 $13.99
Steak $12.99 $13.99 $14.99
G.Turkey $11.99 $12.99 $13.99
G.Beef $11.99 $12.99 $13.99
T.Meatball $11.99 $12.99 $13.99
Salmon $16.99 $17.99 $18.99
Shrimp $15.99 $16.99 $17.99
Swai/Cod $12.99 $13.99 $14.99
Bison $17.99
Maui Patty $12.99
Meaty Patty $12.99
Make it a Burrito +$1.99
MORNIN' FUEL
Fuel Up Mornin' Bowl $10.99
Breakfast Egg-byte Bowl $11.99
Breakfast Burrito $9.99
Power Waffles $10.99-$12.99
Protein Fuel'd Pancakes $10.99-$12.99
SMOOTH FUEL
Caffeine Run
Choco-Bar
Horchata
PB & Banana
Strawberry & Banana
Small: $6 Large: $11
SWEET-PIT STOP
Protein-Wheel
Protein Brownie
STARTING AT $2.50
VEGAN
PB Meatballs
PB Nuggets 4/6/8
Tofu
Starting at $12.99
BUILD YOUR Salad
Starting at $11.99
1 Choose your salad mix
2 Choose Your Carbs
3 Choose Your Protein
4 Choose 3 Topping & Dressing
Consumer advisory consumption of raw or undercooked meat, poultry, seafood, shellfish or eggs may increase risk of foodborne illness especially if you have certain medical conditions
FUEL'D Kitchen
About
Photos


FUEL'D
KITCHEN
Photos
About
Contact
MEAL PREP.
Healthy. Simple.
Fresh.








(Complaint at ¶ 21.)

A predominant feature of both the genuine and the infringing restaurant menus and advertising are the words "FUELED" and "FUEL'D" followed by the word "KITCHEN". (Complaint at ¶ 22.)

Further, on June 28, 2023, Plaintiff sent a cease-and-desist letter to Fuel'd Kitchen at 540 Hidden Valley Pkwy, Unit 101, Corona, CA 92879 regarding its sale of restaurant services bearing the Infringing Mark. (Complaint at ¶ 23; ARW Decl. at ¶ 7; Ex. C.) Defendant's use of the Infringing Mark did not cease after receipt and acknowledgment of the letter. (Complaint at ¶ 24; ARW Decl. at ¶ 7.)

Defendant Palomino Trade sold and continues to sell the Infringing Services despite having actual and specific knowledge of Plaintiff's rights in the FUELED FRESH KITCHEN mark and of Eat Strong's objection to Palomino Trade's sale of products bearing unauthorized copies of the Infringing Mark. (Complaint at ¶ 25.; ARW Decl. at ¶ 8.) Palomino Trade's conduct is willful, intentional, and represents a conscious disregard for Plaintiff's rights in the FUELED FRESH KITCHEN mark. (Complaint at ¶ 26.) Further, the fact that Palomino Trade continued its unlawful conduct by selling the Infringing Services even after receiving Eat Strong's cease-and-desist letter demonstrates Palomino Trade's intent to continue selling Infringing Services without regard for Eat Strong's intellectual property rights. (*Id.*; ARW Decl. at ¶¶ 7-8.)

Eat Strong filed this action on October 5, 2023, and served it on Palomino on November 17, 2023, evidenced by the proof of service of summons on file with this Court. (ARW Decl. at ¶¶ 5, 6.) As part of its investigation about Defendant's continuing use, on November 21, 2023, local counsel for Eat Strong ordered food from Defendant's website, https://fueldkitchencorona.square.site, which continued to use the Infringing Mark. (*Id.* at ¶ 8; *See* Ex. D.) So, even after being served with the Complaint in this action, Defendant continued its use of the Infringing Mark. Further, as part of its investigation, Plaintiff located and captured the Defendant's Instagram site, as of January 18, 2024, which further demonstrates Defendants blatant and continuing of the Infringing Mark's use in the same marketing channels utilized by Plaintiff. (*Id.* at ¶ 9, Ex. E.)

Neither Palomino nor any of its representatives have responded to, or even acknowledged, Plaintiff's Complaint. (ARW Decl. at ¶ 10.) After waiting 30 days for Defendant to respond to the service of the Summons and Complaint, on December 22, 2023, Eat Strong requested that the Default of Palomino be entered on. (ARW Decl. at ¶ 11, Ex. F [Doc 21].) On December 27, 2023, the Clerk of this Court entered default against Defendant after Defendant failed to file a responsive pleading to the

Complaint ("Entry of Default;" Docket 22). (ARW Decl. at ¶ 12.) In an abundance of caution, counsel for Eat Strong sent a copy of the Entry of Default, to the counsel for Palomino who had engaged with Eat Strong prior to the filing of the Complaint. (Ex. H; ARW Decl. at ¶ 14.) Again, Plaintiff received no response. (*Id.*)

Eat Strong hereby requests that this Court enter Default Judgment against Palomino and submits this Motion and concurrently submits a [Proposed] Final Judgment that contains the requested relief. As part of this request, in addition to a permanent injunction, Plaintiff seeks an award of its attorneys' fees in the amount of $16,499, and its costs, for this "exceptional case" pursuant to 15 U.S.C. § 1117(a).

## III. POINTS AND AUTHORITIES

### A. LEGAL STANDARD FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

Pursuant to FRCP Rule 55(b), a default judgment may be entered by the clerk as well as by the Court. FRCP 55(b)(2) governs motions to the Court for a judgment by default. *Blumenthal Distributing, Inc. v. Comoch Inc.*, 652 F.Supp.3d 1117, 1125-1126 (C.D. Cal. 2023). In the Ninth Circuit, a district court may consider the following factors in exercising its discretion to award a default judgment: (1) the possibility of prejudice to the Plaintiff, (2) the merits of Plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In applying this discretionary standard, the factual allegations contained in the Plaintiff's Complaint will be taken as true, except for those relating to the amount of damages. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016).

1. **Possibility of Prejudice to Plaintiff**

Plaintiff would be extremely prejudiced if default judgment was not granted against the Defendant. Through the sale and offer for sale of goods and services using the Infringing Mark, Defendant has injured Plaintiff's reputation in the food and restaurant industry as well as diluted its goodwill.

Since Defendant has completely ignored this lawsuit, and the website and social media sites containing the Infringing Mark are still in use as of the filing of this Motion, it is likely that it has continued and will continue its infringing activities, causing even further injury to Plaintiff. (ARW Decl. at ¶ 13.) As such, if default judgment is not granted, Plaintiff will be left with no recourse for its injuries to its reputation and business caused by Defendant's infringing activities, as well as for their efforts in litigating this case. (*Id.*) Such an outcome would certainly be prejudicial to Plaintiff and as such, this first *Eitel* factor supports a default judgment award to Plaintiff.

2. **Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint**

With respect to the merits of Plaintiff's substantive claim (second factor) and the sufficiency of the Complaint (third factor), Plaintiff has set forth a well-pleaded Complaint, and has listed all the essential facts and elements as to each of its causes of action against Defendant, including a cause of action for Federal Trademark Infringement under 15 U.S.C. § 1114 of the Lanham Act.

To prevail on its trademark infringement claim under the Lanham Act, Plaintiff must prove that, without its consent, Defendant used in commerce a reproduction or copy of Plaintiff's registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers. 15 U.S.C. §1114(a)(1); *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1046 (9th Cir. 1999). The Ninth Circuit has "developed eight factors, the so-called Sleekcraft factors, to guide the determination

of a likelihood of confusion." *GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). These factors are "(1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of [Plaintiff's] mark; (5) [Defendants'] intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers." *Id*. "In the context of the Web in particular, the three most important Sleekcraft factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel." *Id*. (citation and internal quotation marks omitted). *See also Crocs, Inc. v. La Modish Boutique*, 2021 WL 8441527, at *2 (C.D. Cal. Dec. 9, 2021).

Here, the marks are nearly identical. The infringing FUEL'D KITCHEN mark is phonetically identical to Plaintiff's FUELED FRESH KITCHEN mark, the only written distinction being an apostrophe in place of the second "E" in "FUELED" and the omission of "FRESH" in the infringing mark.[1] Both parties provide in-person meals and meal plans to consumers. Both parties market their marks and services through the Internet, particularly on social media platforms such as Facebook and Instagram. (ARW Decl. at ¶ 9; Ex. E). Thus, the first three critical factors weigh in favor of Plaintiff's claim of trademark infringement. Due to Plaintiff's long use (since 2018), extensive sales, and significant advertising and promotional activities, the Trademark has achieved widespread acceptance and recognition among the consuming public and the trade throughout the United States. (Complaint, ¶¶ 15-16.) The fact that Palomino Trade continued its unlawful conduct by selling the Infringing Services even after receiving Eat Strong's cease-and-desist letter demonstrates Palomino Trade's intent to continue selling Infringing Services without regard for Eat

[1] Though the term "FRESH" is not included in Defendant's Infringing Mark, it is used on their website close in proximity to the Infringing Mark. (*See* Complaint at ¶ 21.)

Strong's intellectual property rights. (Complaint at ¶ 24; ARW Decl. at ¶ 7) Plaintiff intends to expand its operations and use its mark in nationwide. Moreover, Plaintiff advertises using its mark nationwide to a broad audience of consumers. Such a broad target audience is unlikely to exercise a high degree of care in making purchasing decisions. Plaintiff's allegations demonstrate that all Sleekcraft factors, particularly the first three, are met.

Plaintiff properly alleges the necessary elements for a cause of action for trademark infringement in violation of the Lanham Act. The complaint identifies Plaintiff's ownership of and exclusive rights to use the registered Trademark. (Complaint, ¶¶ 11-16) Defendant used in commerce in connection with the purchase, advertising and sale of products and services bearing the Infringing Mark without Plaintiff's consent. (Complaint, ¶¶ 17 - 22) In addition, Defendant's conduct is likely to cause confusion or mistake or to deceive customers and has thereby caused damage to Plaintiffs. (Complaint, ¶¶ 27-28.) Accordingly, the second and third *Eitel* factors likewise favor entry of default judgment against Defendant.

3. **Sum of Money at Stake**

With respect to the fourth factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendants' conduct." *Blumenthal Distributing*, 652 F.Supp.3d at 1130. Defendant has engaged and continues to knowingly engage in infringing transactions involving the sale and distribution of infringing products and services. Defendant's actions have caused damage to Plaintiff's reputation for high quality food preparation goods and services. Eat Strong needed to engage counsel and file the instant action to protect its mark. Nevertheless, Defendant continues to ignore this lawsuit by failing to plead or otherwise defend in this action. Due to such conduct on the part of Defendant, Plaintiff is entitled to a default judgment.

**4. Possibility of Dispute Concerning Material Facts**

Plaintiff has satisfied the fifth *Eitel* factor as well, since all well-pleaded facts in the Complaint are to be taken as true upon entry of default. In this case, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish its claims, and this Court has entered default against Defendants. Consequently, there is no dispute regarding the material averments of the Complaint, and the likelihood that any genuine issue exists is at best, remote. *See Phillip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

**5. Whether Default was Due to Excusable Neglect**

Defendant has had over two months to respond to the Complaint served upon it by Plaintiff. However, Defendant has failed to file an answer or otherwise make an appearance in this case. Such behavior by Defendant should in no way be seen as excusable neglect. Indeed, as discussed below Defendants should be reprimanded for its conduct.

**6. Strong Policy Underlying the Federal Rules of Civil Procedure**

Finally, the mere existence of FRCP 55(b) indicates that the seventh *Eitel* factor is not alone dispositive. *Phillip Morris*, 219 F.R.D. at 501. The Defendant has failed to set forth any type of defense to this action. Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id. See also Pepsico, Inc. v. Cal. Sec. Cans.*, 238 F.Supp.2d 1172, 1177 (C.D.Cal., 2002). Therefore, the seventh factor also favors granting a default judgment in favor of Plaintiff.

**B. PLAINTIFF IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS**

Plaintiff additionally applies to the Court to fix the attorneys' fees at $16,499. (ARW Decl. at ¶ 18.) Attorneys' fees are recoverable for violations of the Lanham Act in "exceptional cases." 15 U.S.C. § 1117(a). A trademark case is considered "exceptional" where the district court finds that the defendant acted maliciously,

fraudulently, deliberately, or willfully. *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005). A case may also be exceptional "where the defendants disregard the proceedings and do not appear." *Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1292 (C.D. Cal. 2001). In the context of a default judgment, the Ninth Circuit has upheld awards of attorneys' fees "solely because, by entry of default judgment, the district court determined, as alleged in [plaintiff's] complaint, that [defendant's] acts were committed knowingly, maliciously, and oppressively, and with an intent to ... injure [plaintiff]." *Derek Andrew, Inc. v. Proof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *Syntex Healthcare Products Co., Ltd. v. McCreless Enterprises, LLC*, 2023 WL 4503528, at *12 (C.D. Cal. June 2, 2023).

Defendant never answered Plaintiff's Complaint and it never appeared in the proceeding, despite having provided a response to Plaintiff's cease and desist letter which indicates that Defendant had and has actual knowledge of this action. (ARW Decl. at ¶¶ 8, 9, and 14.) Moreover, based on the facts adduced above, the nature of the infringing activity perpetrated by Defendants is willful, malicious, deliberate, and fraudulent. (*Id.*) Consequently, this is an exceptional case for which attorneys' fees should be awarded.

Plaintiff's request for $16,499 in attorneys' fees is supported by (1) contemporaneous billing records; (2) counsels hourly rates; and (3) evidence that this rate is reasonable for attorneys of like skill and experience. (ARW Decl. at ¶¶ 15-17; Exs. I, J.)

Plaintiffs are also entitled to its costs incurred in this action. 15 U.S.C. § 1117(a); *Blumenthal Distributing*, 652 F.Supp.3d, at 1134. Pursuant to Local Rule 54-3, Plaintiff will submit its Bill of Costs within 15 days of entry of judgment.

### C. PLAINTIFF'S ARE ENTITLED TO A PERMANENT INJUNCTION

Defendant's conduct in selling goods and services using the infringing trademark violates the Trademark Act (15 U.S.C. Sections 1114(a)(1) and 1125),

California Unfair Competition Law (California Business & Professions Code Section 17200 et seq.), and common law unfair competition. *See generally, Davidoff & CIE v. PLD Inter. Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001); and *Sebastian Intern., Inc. v. Russolillo, et al.*, 151 F. Supp.2d 1215 (C.D. Cal. 2001).

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); 15 U.S.C. §1116(a). Permanent injunctions are routinely granted in cases where, like the instant case, a defendant has not appeared in the action at all. *Philip Morris*, 219 F.R.D. at 502; *Pepsico*, 238 F.Supp.2d at 1178; *Syntex Healthcare Products Co.*, 2023 WL 4503528 at *12; *Carbon Chemistry Ltd. v. Banoun*, 2021 WL 4437508, at *5 (C.D. Cal. July 29, 2021). As such, Plaintiff also requests that this Court order a permanent injunction against Defendant to enjoin it from using the Trademark, the Infringing Mark, or the term "FUELED" or any phonetic equivalent in connection with the sale and offer for sale of infringing products or services.

## IV. CONCLUSION

It is appropriate for the Court to enter a Default Judgment containing a permanent injunction prohibiting Defendant from engaging in trademark infringement and unfair competition, and award Plaintiff's attorneys' fees in the amount of $16,499.

Dated: January 31, 2024

Amanda R. Washton
Chelsea A. Bernard, members of
CONKLE, KREMER & ENGEL
Professional Law Corporation

By: */s/ Amanda R. Washton*
Amanda R. Washton
Attorneys for Plaintiff Eat Strong, LLC

# PROOF OF SERVICE

**Eat Strong, LLC v. Palomino Trade, LLC**
**Case No. 5:23-cv-02041-RGK-kk**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 3130 Wilshire Boulevard, Suite 500, Santa Monica, CA 90403-2351.

On January 31, 2024, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

Palomino Trade, LLC
Attn: Antoinette Cordova, Registered Agent
1617 Rivendel Drive
Corona, California 92883

For Defendant Palomino Trade, LLC

**BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 31, 2024, at Santa Monica, California.

______________________________
Cathy Donine